**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JULIO GUERRERO** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-3773** |
| | : | |
| **AGENCY INSURANCE** | : | |
| **COMPANY OF MARYLAND, INC.** | : | |

**McHUGH, J.**                                                                           **May 27, 2026**

### MEMORANDUM

This is an underinsured motorist insurance claim involving a workman who was approaching a truck to retrieve a tool when he was struck by a speeding car. The striking driver's coverage was inadequate to compensate for the workman's injuries, and he seeks underinsured coverage under the policy covering the parked truck. The truck's policy provides coverage for an individual "occupying" the vehicle, which is defined to include anyone "in, on, upon, entering or exiting" from it. Under Pennsylvania law, because of the remedial nature of underinsured motorist coverage, these terms are subject to liberal interpretation. Applying that standard here, there is ample evidence from which a jury could find that Plaintiff was "occupying" the truck when he was struck, giving rise to underinsured coverage. The policy also provides for stacking the limits of coverage, but only for relatives of the owner of the vehicle. Plaintiff may therefore proceed past summary judgment to seek compensation for his injuries, but lacking any familial relationship, is not eligible to recover stacked limits.

## I.    Factual Record

On October 28, 2024, an SUV sped through a red light at the corner of Walnut Lane and Wayne Avenue in Northwest Philadelphia.  *See* Crash Report at 9, ECF 15-6.[1]  The SUV hit a parked car at a high speed, spun out of control, and struck Plaintiff Julio Guerrero, pinning him against a pickup truck.  *See* Crash Video, ECF 15-5 (on file with Court).[2]

The truck's owner was contractor Johanna Meza, Guerrero's friend of twenty years.  *See* Meza Interview Tr. at 10, ECF 15-7.[3]  Meza confirms that Guerrero was working nearby and had asked Meza for permission to get a tool from the pickup, which Meza gave along with the pickup's keys.  *See id.* at 8-10.

In a security camera video showing the crash, Guerrero and the pickup are set in the upper right corner of the screen.  Guerrero asserts he was "actively engaging with the door and entering," *see* Pl.'s Resp. at 1, ECF 17-2, while Defendant Agency Insurance ("Agency") admits only that Guerrero was "positioned outside the driver's side door of the truck."  Def.'s Br. at 2, ECF 15-1.

After the crash, Guerrero was rushed to a local trauma ward.  *See* Pl.'s Ex. C, Hosp. R. at 13-15, ECF 17-1.  Attending staff had to amputate Mr. Guerrero's right leg, which had been "mangled" by the car crash; he also suffered fractures and ischemic injury to his left leg, as well as various other fractures and joint dislocations across his body. *Id.*

---

[1] The police report describes the speeding SUV as first striking another parked car, which then in turn strikes Guerrero, but the video does not support that, and the parties' briefs both describe the speeding SUV as directly striking Guerrero.

[2]  Guerrero's Response in opposition to the Motion includes screengrabs of the moments immediately before and after the crash.  *See* Pl.'s Resp. at 3-4, ECF 17-2.

[3]  In a later interview with an insurance investigator, Meza first insisted he had no idea who Guerrero was or why he was approaching the pickup.  *See* Meza Interview Tr. at 5-7.  But when pressed on why a stranger was approaching his truck, Meza changed his story and admitted to knowing Guerrero.  *See id.* at 8-9.

Agency's insurance policy ("Policy") provides underinsured motorist coverage, in relevant part:

> INSURING    AGREEMENT    UNDERINSURED    MOTORIST COVERAGE
>
> Subject to the Limits of Liability, if you pay the premium when due for Uninsured Motorist Coverage, we will pay for damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury:
> 1. sustained by an *insured*;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance, or use of an underinsured auto.

Insurance Policy ("Policy") at 40, ECF 15-8 (emphasis added).

As applied to the underinsured motorist coverage, an "insured" is:

> a. if the named insured shown on the Declarations Page is a natural person:
> (i) you or a relative;
> *(ii) any person occupying your insured auto or a temporary substitute auto*; and
> (iii) any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) or (ii) above; . . .

*Id.* at 38 (emphasis added).

Under the Policy, "occupying" means "in, on, upon, entering or exiting." *Id.* at 21.

Meanwhile, the limits of liability on stacked coverage are:

> If you have selected stacked coverage under this endorsement, and the named insured is a natural person, the following shall also apply to bodily injury sustained by you or a relative:
> 1. *If you or a relative sustain bodily injury while occupying an insured auto*, the limit of liability shall be the limit available under Nonstacked Limits of liability described above and the limit shown on the Declarations Page multiplied by the number of insured autos that are not involved in the accident.

*Id.* at 40 (emphasis added).

Finally, the Policy defines a "relative" as:

> A. any person living in the household in which the named insured resides who is related to the named insured by blood, marriage, or adoption, including a ward or foster child; and
> B. a minor child in the custody of:
>   (i) the named insured; or
>   (ii) a person residing in the named insured's household who is related to the named insured. This term only applies if the named insured is a natural person.

*Id.* at 22.[4]

Guerrero seeks underinsured coverage under the policy and seeks to stack that coverage because more than one vehicle is insured. Agency moves for summary judgment as to both.

## II.     Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).  Under Pennsylvania law, "the interpretation of an insurance contract is a matter of law for the court."  *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005).

## III.    Discussion

### A.  A jury could find Guerrero was "occupying" the truck when he was hit.

Based upon the evidence in the video, the jury could find Guerrero was "occupying" the pickup both under the Policy definition, which includes "entering" as a form of "occupying," and under the broader definition adopted by the Pennsylvania Supreme Court in *Utica Mutual Insurance Company v. Contrisciane*, 473 A.2d 1005 (Pa. 1984).

---

[4] Though the Policy includes a business alias of Meza, the "named insured" on the declaration page is Meza as a natural person.  *See id.* at 3.

### 1.    *"Entering" the truck under the Policy*

First, the Policy includes "entering" in the definition of "occupying."  *See* Policy at 21 ("'*Occupying*' means in, on, upon, *entering* or exiting.") (emphases added).  "Entering" has no further definition in the Policy.  Such "words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).  To "enter" is to "come or go into a place, area, building, etc." *Enter*, OXFORD ENG. DICTIONARY (last visited Apr. 16, 2026).

Having viewed the video—which is capable of being viewed in slow motion—a reasonable jury could certainly find that Guerrero was entering the truck.  He approaches the driver's side of the pickup and appears to lean or move toward the door, actions consistent with him opening the door to go into the vehicle.  When the SUV flies toward the startled Guerrero, he dives at the truck, either along its exterior or into the open doorway, also consistent with an effort to enter.  Given this evidence, Agency is not entitled to summary judgment.

### 2.    *The* Utica *test also supports finding Guerrero was occupying the truck*

Agency characterizes the video as showing only that Guerrero was "positioned at the driver's side door."  Def.'s Br. at 2.  Its argument appears to presume that some physical contact between Guerrero and the vehicle is necessary for him to meet the definition of occupying.  This fails to account for how Pennsylvania courts have approached this issue.

The controlling case is *Utica Mutual.*  There, a man got into a minor accident while driving in a company car, exited to give his license and registration to a responding police officer, and then was run over and killed by an uninsured driver.  473 A.2d at 1006-07.  His employer's auto policy had underinsured motorist coverage similar to that here, extending to anyone lawfully "occupying" the covered vehicle.  *See id.* at 1007-08.  The Supreme Court noted that Pennsylvania's statute was

5

"intended to protect those persons who while lawfully using the highways themselves suffer grave injuries," further concluding that "[i]n light of this purpose we believe a liberal interpretation of the term 'occupying' is required." *Id.* at 1009.

The Supreme Court then promulgated a four-part test, under which a person outside of a vehicle can be considered to be occupying it if:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.* at 1009.  Both parties agree that this test controls, and Agency concedes the first two elements. *See* Def.'s Br. at 11.  But it contests whether Guerrero was "vehicle oriented" and whether he was engaging in a "transaction essential to the use of the vehicle."

a.  "Vehicle-oriented"

The vehicle-oriented element asks what a person's purpose was for being outside the vehicle when the accident occurred.  *See Petika v. Transcon. Ins. Co.*, 855 A.2d 85, 90 (Pa. Super. Ct. 2004).  More specifically, vehicle orientation asks whether someone has "severed" their "connection" with the car—that is, whether their intended next steps related to their use of the car. *Id.* at 88; *see also Merchants Mut. Ins. Co. v. Benchoff*, No. CIV.A. 09-418, 2010 WL 2245572, at *10 (W.D. Pa. May 10, 2010) ("Until . . . a person is on his or her own without reference to the [vehicle], the person has not ceased to be a passenger or occupant.").  By focusing on a person's immediate intentions and next actions, "vehicle-orientation" considers only the present and the very near future.

6

For that reason, pedestrians struck by cars are vehicle-oriented when they are "engaged in an activity in immediate preparation to enter their vehicles." *Petika*, 855 A.2d at 89 n.3.  For example, in *Fisher v. Harleysville Insurance Company*, a pedestrian was struck by a car while standing in the beams of his parked truck's headlights, unloading shells from his shotgun before entering the truck.  621 A.2d 158, 159 (Pa. Super. Ct. 1993).  The Superior Court held the victim had been "truck-oriented" because "he was making preparation to enter the [truck] lawfully and carefully."  *Id.* at 160; *see also Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1357 (Pa. Super. Ct. 1994) (holding the plaintiff "was vehicle oriented at the time of the accident because she was in the process of entering the vehicle").  Conversely, in a case cited by Agency, crash victims were not oriented to the insured vehicle when they stepped out of it to render aid to a *different* vehicle. *See Aetna Cas. & Sur. Co. v. Kemper Ins. Co.*, 657 F. Supp. 213, 215 (E.D. Pa. 1987).

Based on this line of cases, there is evidence that Guerrero was vehicle oriented.  The parties do not dispute that when the accident happened, Guerrero's immediate purpose for being outside the vehicle was to enter the pickup and retrieve a tool.  Even if he had not completed this "connection" with the car, like the victims in *Frain*, *Petika*, and *Fisher*, he was "engaged in an activity in immediate preparation to enter" the insured pickup[5]—approaching the truck with keys in hand.

Agency seeks to interpret the term "vehicle-oriented" to mean something more like "driving-oriented," relying upon *Binotto v. Geico Advantage Ins. Co.*, 750 F. Supp. 3d 492 (W.D. Pa. 2024).  *See* Def.'s Br. at 10-12.  In *Binotto*, a hunter was hit by a car after grabbing his rifle from a pickup truck; the court found he "was not vehicle-oriented, he was deer hunting oriented."

---

[5] *Petika*, 855 A.2d at 89 n. 3.

*Binotto*, 750 F. Supp. 3d at 499. Agency generalizes *Binotto* into a rule that "a party collecting objects with the intention to depart from the vehicle for purposes wholly unrelated to the vehicle is not vehicle oriented as a matter of law." Def.'s Br. at 12. Having carefully studied the facts in *Binotto*, in my view it does not faithfully apply the precepts of *Utica Mutual* and other decisions from Pennsylvania appellate courts. The decision appears to turn on what the passenger intended to do after ending his interaction with the vehicle, a consideration not deemed relevant by any Pennsylvania case. Consequently, I do not view it as persuasive.

The video here presents ample evidence that Guerrero was vehicle oriented when he was struck. Indeed, it seems probable that a reasonable jury would find so. But by any measure, there is a material issue of fact.

      b.  <u>"Engaged in activity essential to the use of the car at the time"</u>

Similarly, a jury could find Guerrero was "engaged in activity essential to the use of the car at the time."

The most detailed precedential authority on this element is *McGilley v. Chubb & Son, Inc.*, which explains that a claimant meets the fourth factor when his presence outside the vehicle was "necessitated by duties or obligations *incident to his use* of the [truck]." 535 A.2d 1070, 1075 (Pa. Super. Ct. 1987) (emphasis added). Courts have consistently concluded this element was met where crash victims were injured when using their vehicles as part of their jobs. Thus, a police officer met the fourth element when his cruiser rolled over his foot during a traffic stop, because traffic stops are an essential function of a police cruiser. *See St. Paul Fire & Marine Ins. Co. v. Rhein*, No. CIV. A. 06-CV-04565, 2008 WL 2928671, at *3 (E.D. Pa. July 28, 2008). And a tow truck driver likewise met the fourth element when he was injured unhooking the vehicle he was towing after stopping his truck in a fire. *See Stonington Ins. Co. v. Dardas*, No. CIV.A. 09-5765,

2010 WL 2853916, at *4 (E.D. Pa. July 20, 2010).  In both cases, analysis of the fourth element "focuse[d] upon whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate 'use' of the auto." *Utica Mut.*, 473 A.2d at 1009.

Here the undisputed facts could lead a jury to find Guerrero was engaged in an activity essential to this truck at this time.  Meza used and insured the truck as a work vehicle for his contracting business.  Storing tools represents a commonplace use of a contractor's pickup truck, and Guerrero was approaching to retrieve tools.  Following *McGilley*, a jury could find his presence outside the truck was incident to his use of the truck as a storage place for tools.

Agency acknowledges *McGilley* when it argues that Guerrero's presence outside the truck "was not necessitated by duties or obligations incident to the use of the [t]ruck." Def.'s Br. at 12. Once again, however, its only support is citation to *Binotto*, 750 F. Supp. 3d at 501.  But here again *Binotto* conjured a requirement inconsistent with Pennsylvania law, by holding that the fourth element could only be met by activity that "would return [him]to driving the truck."  This conflicts with the far broader scope of the fourth element as prescribed by *Utica Mutual*, requiring only "a transaction essential to the use of the vehicle at the time."  In the case of a contractor's truck that was parked and holding tools, retrieval of such tools would certainly seem to relate to how the truck was being used at that time.

Agency also cites *Huber v. Erie Ins. Ex.*, 587 A.2d 333 (Pa. Super. Ct. 1990), a brief *per curiam* opinion where the panel held that a motorist injured while loading materials into his parked vehicle could not claim medical coverage under his auto policy.  *Huber* has no relevance whatsoever here.  First, there was a specific exclusion in the policy prohibiting such claims, which the motorist was seeking to overcome on public policy grounds.  Second, the claim there was for first-party benefits which the legislature intended to eliminate as part the cost-containment

provisions of the No-Fault Act.  587 A.2d at 334.  Here, in contrast, the claim is one for underinsured benefits, which *Utica Mutual* recognized as remedial in nature, leading it to adopt what it described as a "liberal interpretation" of the definition of "occupying."

In summary, summary judgment is denied on the question of whether the Policy insured Guerrero.

**B.  A jury could not find Guerrero was a "relative" entitled to stacked coverage.**

Meza's insurance policy provides for stacked benefits only for the policyholder or their "relative."  Policy at 40.  The Policy defines a "relative" as:

> A. any person living in the household in which the named insured resides who is related to the named insured by blood, marriage, or adoption, including a ward or foster child; and
> B. a minor child in the custody of:
> (i) the named insured; or
> (ii) a person residing in the named insured's household who is related to the named insured. This term only applies if the named insured is a natural person.

*Id.* at 22.  The definition applies throughout the policy and in the endorsements unless specifically modified, *see id.* at 20, and the term "relative" is not modified by the underinsured motorist section or the related stacked coverage section.

I am therefore puzzled by Guerrero's contention that states that "the policy . . . contains no limiting language clarifying whether 'relative' is restricted to blood relation, marriage, or household membership," Pl.'s Resp. at 16, and also puzzled why Agency focuses on Guerrero as a "class two insured" rather than emphasizing the language of the policy. *See* Def.'s Br. at 13-17. Regardless, the policy requires that a claimant must be a relative to access stacked coverage, and there is no basis on which a jury could make that finding as to Mr. Guerrero.

## IV.    Conclusion

For the reasons set forth above, Agency's Motion for Summary Judgment will be denied as to Guerrero's coverage but granted as to his entitlement to stacked coverage.  An appropriate order follows.

  /s/ Gerald Austin McHugh  
United States District Judge
